UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| EDMOND M. PENDLETON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:13-cv-137-NT |
| | ) | |
| NANCY BERRYHILL, | ) | |
| ACTING COMMISSIONER, | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant | ) | |

**REPORT AND RECOMMENDED DECISION**

In this action, Plaintiff Edmond M. Pendleton seeks supplemental security income benefits under Title XVI of the Social Security Act. Defendant, the Social Security Administration Acting Commissioner, found that Plaintiff has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action for judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court vacate the administrative decision and remand the matter for further proceedings.

**THE ADMINISTRATIVE FINDINGS**

The Commissioner's final decision is the July 16, 2015, decision of the Administrative Law Judge (ALJ). (Decision, ECF No. 19-2.)[1] The ALJ's decision tracks

---
[1] The Appeals Council upheld the ALJ's decision and stated that the ALJ's decision would serve as the

the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. § 416.920. The ALJ considered an extended period of alleged disability, commencing with the alleged onset date of April 13, 2009, due to a prior remand in case number 1:13-cv-00137-NT.

Following further proceedings, the ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of obesity, arthritis of the right knee, degenerative disk disease of the lumbar spine, history of thoracic compression fracture with residual pain, cognitive disorder not otherwise specified, and learning disorder. (Decision ¶ 2.) At step 3, the ALJ concluded, inter alia, that Plaintiff's cognitive disorder does not meet or equal the severity of Listing 12.05. [2] (*Id.* ¶ 3.)

In her assessment of Plaintiff's residual functional capacity (RFC), the ALJ found that Plaintiff has the capacity for light work, subject to a four-hour limit on sitting and a four-hour limit of walking and standing; Plaintiff cannot engage in constant twisting, bending, or turning; and Plaintiff can perform simple jobs involving simple instructions and limited changes. (*Id.* ¶ 4.) The ALJ also determined that Plaintiff's RFC does not enable him to perform past relevant work, but that a person with Plaintiff's vocational profile could perform other substantial gainful activity. (*Id.* ¶ 9.) Specifically, the ALJ found that such a person could make a transition to occupations such as parking lot attendant, document preparer, and dowel inspector. (*Id.*) Based on her findings, the ALJ

---

final administrative decision. (R. 2.).

[2] Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P.

determined that Plaintiff was not under disability between the alleged onset date, April 13, 2009, and the date of decision. (Decision ¶ 10.)

## PLAINTIFF'S STATEMENT OF ERRORS

Plaintiff argues that the ALJ erred at step 3 of the sequential evaluation process when she failed to conclude that Plaintiff's cognitive disorder meets Listing 12.05. (Statement of Errors at 1 – 13, ECF No. 21.) Plaintiff further contends the ALJ's RFC finding lacks support in the record, and that the ALJ did not properly assess the impact of Plaintiff's obesity on Plaintiff's RFC. (*Id.* at 13 – 18.) Finally, Plaintiff argues the ALJ's explanation for the reason she did not give greater weight to Plaintiff's subjective report of symptoms demonstrates that she erred in her assessment of the evidence. (*Id.* at 18 – 20.)

## DISCUSSION

### A. Standard of Review

A court must affirm the administrative decision provided that the ALJ applied the correct legal standards and provided that the decision is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

B. **Analysis**

1. *Listing 12.05*

Prior to amendments effective January 17, 2017, [3] and for purposes of Plaintiff's claim, relevant listing language provided as follows:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing. Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations. For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work. …

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A).

"The listings are so constructed that an individual with an impairment(s) that meets or is equivalent in severity to the criteria of a listing could not reasonably be expected to do any gainful activity." *Id.* "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

---

[3] The Social Security Administration revised the Listing regulations regarding mental disorders effective January 17, 2017, to reflect, inter alia, "advances in medical knowledge." The ALJ did not apply, and the parties have not discussed, the current language of the Listing.

4

The listing on which Plaintiff relies, Listing 12.05(C) reads as follows:

12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

…

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function ….

The ALJ found that Plaintiff did not meet the listing because the record did not include evidence that documented a "developmental disability prior to age twenty-two." (Decision ¶ 3, R. 22.) According to the ALJ, testing of Plaintiff during early childhood revealed "low normal" intelligence (citing Ex. B20E at 3, 9–10), and high school records reflected that Plaintiff received one-on-one instruction for only one period per day and that he "progressed well in his classes" (citing Ex. B20E at 5–6, 8). (*Id.*) Additionally, the ALJ noted an absence of evidence suggesting Plaintiff could not "dress, bathe, walk, or talk prior to age 22." (R. 22.) Finally, in her review of the medical opinion evidence of record, the ALJ noted the opinion of testifying expert James Claiborne, Ph.D, when assessing Plaintiff's adaptive functioning. The ALJ placed "significant weight" on Dr. Claiborne's opinion, and determined that the opinion supported her finding that the record lacked "evidence that the claimant could not engage in age-appropriate self-care activities prior to age 22". (R. 27 – 28.)

At the hearing, Dr. Claiborne testified that he did not see evidence in the record of "adaptive behavior deficits." (R. 69.) According to Dr. Claiborne, the concept of adaptive functioning concerns general life skills more than academic skills. (R. 70.) Dr. Claiborne explained that "life skills" include age-appropriate social interaction, the ability to feed oneself, the ability to dress oneself appropriately for the climate, and the ability to maintain hygiene and wash and change clothes at appropriate times. (R. 71 – 72.)

Plaintiff asserts his educational experience demonstrates that he had deficits in adaptive functioning prior to age 22. At the hearing, Plaintiff testified that he received one-on-one support in high school in all of his classes throughout the day. (R. 63.) Additionally, Plaintiff cites his academic records (ex. B20E), which include a report of intelligence testing administered when Plaintiff was age seven. (R. 661.) The report notes a referral for "learning disability" and previous testing that found "weakness in figure/ground discrimination, directionality, coding, phonics, comprehension, sensory motor skills and retention." (*Id.*) Based on a variety of tests, the evaluator concluded that Plaintiff performed motor visual activity at the level of a four-year old, could not coordinate alternate motor responses, had neurological deficits, had attention lapses, had to be cued constantly to elicit responses, and responded in a way that indicated the presence of a brain injury. (*Id.*) The evaluator recommended a medical referral to determine the extent of any brain injury and to rule out epilepsy. Isolated learning was also recommended. (R. 661 – 62.) In addition, the academic records include a high school grade report that reflects mostly low but passing grades, and completion of twelfth grade. (R. 654.)

An initial issue for the Court is whether the ALJ erred with respect to her finding

that Plaintiff does not have deficits in adaptive functioning that initially manifested during the developmental period. "'Adaptive functioning' is ordinarily associated with activities of daily living." *Richardson v. Soc. Sec. Admin. Comm'r*, No. 1:10-CV-00313-JAW, 2011 WL 3273140, at *7 (July 29, 2011), report and recommendation adopted, 2011 WL 3664357 (D. Me. Aug. 18, 2011). "In a nut shell, the standard requires an assessment of a claimant's ability to appropriately engage in day-to-day activities of independent living." (*Id.*)

Although Plaintiff's educational records are relevant to the inquiry and suggest Plaintiff could have been expected to demonstrate deficits in adaptive functioning through age 22, the evidentiary record does not compel the conclusion that such deficits are present in adulthood and manifested in the developmental period. In other words, the ALJ's assessment of the significance of the academic records, which assessment is supported by medical opinion evidence of record, is reasonable particularly given the evidence that reflects Plaintiff was able to complete high school with the aid of an individualized education plan, can perform basic mathematical operations, can make change, can read books and newspapers, can write, can do crossword puzzles, can use a computer, can cook and clean, and can follow instructions associated with hobby activities.

## 2.  *The ALJ's Residual Functional Capacity Finding*

A claimant's residual functional capacity (RFC) is "the most [a person] can still do despite your limitations". 20 C.F.R. § 416.945(a)(1). The ALJ made her RFC assessment after a review of the record, including the medical expert opinions regarding Plaintiff's RFC. When considering Plaintiff's capacity for physical exertion, the ALJ reviewed

7

several assessments by medical professionals, but did not place great weight on any of the assessments. (Decision, R. 25 – 27.) Plaintiff argues the ALJ should have placed more weight on the assessments offered by his treating providers, particularly where the ALJ gave only "some weight" (R. 25) to the testifying medical expert called at the hearing to address Plaintiff's physical exertional capacity (Peter Webber, M.D.). (Statement of Errors at 14 – 18.)

The record includes medical opinion evidence from Maine Disability Determination Services consulting experts in both 2009 and 2013, who opined that Plaintiff's physical impairments are not severe. (Exs. B3A, B9A, B2F.) In August 2010, a physician, who was apparently under contract with the City of Augusta Bureau of Health and Welfare, assessed a limitation to light duty, no kneeling or bending, and no twisting. (Exs. B11F, B12F.) In August 2011, Plaintiff's chiropractor, Richard Southiere, provided a statement that included multiple exertional, postural and manipulative limitations beyond those found by the ALJ. (Ex. B17F.)

In December 2014, treating source Jeffrey Newsom, M.D., after reviewing Plaintiff's medical record and recent imaging evidence, opined that Plaintiff "has some mild degenerative arthritic changes in the back and knee and chronic pain as well as a stable thoracic compression fracture, which may limit his capacity to participate in manual labor [and in] particular, lifting and twisting activities may be difficult to tolerate." (Ex. B27F.) At Plaintiff's April 2015 hearing, Dr. Webber testified that based on Dr. Newsom's letter, manual labor should be excluded, but not the entire range of light work. Dr. Webber endorsed some restriction on bending and twisting activity, and further noted that the

8

record did not clearly support the determination that Plaintiff could not sit for more than 2 hours or should be restricted to lifting less than 20 pounds. (R. 54 – 56.)

As to Plaintiff's mental RFC, Plaintiff's consulting examiner, Robert Kahl, Ph.D., opined that Plaintiff could not meet competitive standards with respect to making simple work-related decisions. (Ex. B18F, R. 858.) Dr. Kahl, however, was not a treating source and the ALJ permissibly found the opinion expressed by James Claiborne, Ph.D., at the April 2015 hearing was entitled to greater weight. (R. 70 – 71: "[H]e's going to be restricted to relatively simple tasks, simple repetitive kinds of tasks. He would not be able to make complex judgments or follow detailed instructions[.]")

In further support of her findings, the ALJ found Plaintiff's subjective report of symptoms to be not fully credible, based on her review of Plaintiff's testimony and other record evidence. Ordinarily, on matters of credibility, the Commissioner's decision will be affirmed where the record supports diverse inferences. *Rodriguez v. Celebrezze*, 349 F.2d 494, 496 (1st Cir.1965); *Shaw v. Sec'y of Health & Human Servs.*, No. 93–2173, 1994 WL 251000, * 4, 1994 U.S. App. LEXIS 14287, *14–15 (1st Cir. 1994) (unpublished).

In this case, without the potential impact of Plaintiff's obesity on his limitations, the opinions expressed by Dr. Webber, Dr. Newsome, and Dr. Claiborne, together with the ALJ's assessment of the other evidence of record, would ordinarily provide substantial evidence to support the ALJ's RFC findings. The issue is whether the ALJ properly assessed the impact of Plaintiff's obesity on Plaintiff's functional capacity.

3. *Obesity*

Plaintiff argues the ALJ's discussion of obesity was perfunctory and warrants a

9

remand for further evaluation. (Statement of Errors at 18.) *Titles II & XVI: Evaluation of Obesity*, SSR 02–1P (S.S.A. Sept. 12, 2002), provides: "When we identify obesity as a medically determinable impairment ..., we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that we identify." This Court requires that a disability benefits determination include "an individualized assessment" or "meaningful specification" of the limitations imposed by obesity when the decision maker concludes, at step 2, that obesity is a severe condition; the Court, therefore, will remand for further proceedings without requiring that the claimant demonstrate that the error was not harmless, if a meaningful specification is not provided. *Fothergill v. Astrue*, No. 2:11-CV-247-DBH, 2012 WL 1098444, at *2 (Mar. 29, 2012), *recommended decision adopted*, 2012 WL 1313488 (D. Me. Apr. 17, 2012) (discussing *Kaylor v. Astrue*, No. 2:10-CV-33-GZS, 2010 WL 5776375, at *3 (Dec. 30, 2010), *recommendation adopted*, 2011 WL 487844 (D. Me. Feb. 7, 2011)). An ALJ can satisfy the requirement by relying on the RFC opinion of an expert who took into account the claimant's obesity. If the record reveals the ALJ's findings are supported in this manner, the claimant must demonstrate that the ALJ erred by failing to consider a specific additional limitation imposed or impacted by obesity. *Mathieu v. Colvin*, No. 1:13-CV-239-JDL, 2014 WL 4055515, at *4 (D. Me. Aug. 15, 2014),

The ALJ determined that obesity is a severe condition for Plaintiff. (Decision ¶ 2.) In the RFC discussion, the ALJ reiterated that obesity is a severe condition and is defined as a body mass index (BMI) of 30 or greater. (*Id.* ¶ 4, R. at 24.) As for her assessment,

the ALJ stated: "The claimant's obesity exacerbates his other impairments, and thus plays a role in his physical restrictions." (*Id.*)

Defendant contends the ALJ adequately discussed obesity because the ALJ "specifically considered that Plaintiff's obesity, in combination with his other impairments, reduced his exertional capacity." (Gov't Response at 7 – 8, ECF No. 25.) Defendant does not suggest that the ALJ also relied on an expert RFC opinion that considered the limiting effects obesity has on Plaintiff's functionality.

The record lacks any evidence to suggest the ALJ relied upon an expert opinion regarding the effect of Plaintiff's obesity on his ability to function, and the ALJ did not otherwise provide "an individualized assessment" of, or "meaningful specification" regarding the limitations resulting from Plaintiff's obesity. The ALJ's determination that obesity "plays a role" in Plaintiff's limitations does not satisfy the requirements of *Kaylor* and *Fothergill*. Further assessment of the effect of Plaintiff's obesity on his functional ability is required.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court vacate the administrative decision and remand the matter for further proceedings consistent with this recommended decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days

of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

      Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

                                    /s/ John C. Nivison  
                                    U.S. Magistrate Judge

Dated this 7th day of July, 2017.